**BOULTON v. HEINER, Collector of Internal Revenue.**

**No. 3026.**

District Court, W. D. Pennsylvania.

Nov. 5, 1932.

Bell, O'Laughlin & Silberblatt, of Clearfield, Pa., and Max J. Spann, of Pittsburgh, Pa., for plaintiff.

Louis E. Graham, U. S. Atty., for Western District of Pennsylvania, and John A. McCann, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. F. McMahon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the defendant.

GIBSON, District Judge.

### Findings of Fact.

1. The plaintiff is a citizen and resident of the borough of Clearfield, county of Clearfield, and state of Pennsylvania, and of the United States.

2. Defendant is the duly appointed, commissioned, and qualified Collector of Internal Revenue for the Twenty-third District of Pennsylvania, in said Western District, and resides in the borough of Kittanning, in said Western District.

3. In accordance with the provisions of the income tax laws of the United States, the plaintiff duly filed in the office of C. G. Lewellyn, then Collector of Internal Revenue for the Twenty-third District of Pennsylvania, an income tax return for the year 1917, and upon such return was assessed with income taxes amounting to $1,418.49, which he duly paid to the said Collector of Internal Revenue.

4. Upon audit of the plaintiff's income tax return for the year 1917, the Commissioner of Internal Revenue assessed an additional tax of $6,165.17, which was paid under protest by the plaintiff on the 11th day of May,

1923, and later, on the 8th day of June, 1923, there was also paid a further sum of $308.26, as a penalty for delay in the payment of said sum of $6,165.17.

5. That within sixty days of the time of the payment of said sum of $6,165.17, the plaintiff filed his claim for refund, which was rejected as indicated by letter of January 29, 1924 (Plaintiff's Exhibit C), and on the 12th day of March, 1924, this action was instituted.

6. That the Commissioner of Internal Revenue disallowed the claim of the plaintiff that the sum of $17,500 should be added to the $11,500 allowed by said Commissioner, making a total of $29,000, in determining the cost of the capital stock of the Hale Coal Company and the Lady Smith Coal Mining Company.

7. That by reason of said disallowance, the plaintiff was assessed with and paid additional income tax for the year 1917 in the amount of $3,138.59, of which sum, $2,989.08 is an overassessment and the sum of $149.51 is the excess penalty collected; which sum of $3,138.59, with interest from May 11, 1923, the plaintiff seeks to recover in this action.

8. By stipulation entered into between both parties, the plaintiff waived all exemption to items of additions made by the Commissioner of Internal Revenue except the additional assessment of alleged profit made on the sale of the stock of the Hale Coal Company and the Lady Smith Coal Mining Company and the additional penalty collected by reason thereof.

9. That in the year 1912, and for many years prior thereto, Caroline H. Steinman was the owner in fee of certain lands in Rush township, Centre county, Pa.

10. That Caroline H. Steinman and her husband, A. J. Steinman, for several years prior to 1912 had spent considerable money and labor in prospecting the location, the extent, and value of the coal seams underlying said land. The cost of said investigation and prospecting amounting to approximately $25,000.

11. That Caroline H. Steinman, prior to 1912, had had offers to lease or otherwise dispose of said property.

12. That in the year 1911, diamond drilling and other prospecting works were carried on on said property by John F. Steinman, son of Caroline H. Steinman.

13. That prior to 1912, neither Caroline H. Steinman, her husband, nor her two sons, John F. Steinman and James Hale Steinman, had any knowledge of the coal industry and were uncertain whether it would be more advantageous to lease the property or to operate the same themselves.

14. That the plaintiff, Harry Boulton, together with John Benson of Houtzdale, now deceased, had practical knowledge as to the production and sale of coal.

15. That during the latter part of 1911, an oral agreement was entered into between the Steinmans and Harry Boulton, and John Benson, whereby it was agreed that corporations would be formed, one of which would take a lease from Caroline H. Steinman for the mining of the coal under a portion of her land.

16. That in consideration of the right to subscribe for 25 per cent. of the stock of said corporation, Harry Boulton orally contracted and agreed with Caroline H. Steinman, as well as with John F. Steinman and James Hale Steinman to render his services in the opening and developing of said mine or mines and to do all acts necessary for the opening and developing of said mines, and to superintend the operation of the same as well as the sale of coal produced therefrom until such time as said corporation reached a dividend-paying basis.

17. That after consideration, the Steinmans accepted the proposal of Harry Boulton and John Benson and in consideration of their oral covenants and oral promises, permitted each to subscribe for one-fourth of the capital stock of the corporations to be formed.

18. That the land of Caroline H. Steinman was situate two miles distant from the nearest railroad.

19. That it was required to form a separate corporation known as the Lady Smith Coal Mining Company and to make and take a lease from the Kittanning Coal Company of other lands in order to secure the railroad branch.

20. That Harry Boulton conducted all the negotiations for the securing of said railroad branch as well as completing the formation of the corporations; laid out the openings, tipple, and other improvements at the two separate mines, which were on opposite sides of the valley, and drew and prepared all contracts, leases, and other necessary writings with the Pennsylvania Railroad, Kittanning Coal Company, and Caroline H. Steinman, without any charge therefor and in performance of his oral contract with the Steinman family.

21. That Harry Boulton secured a right

of way for said branch railroad and undertook the grading of the same and together with the other incorporators financed the building of same.

22. That Harry Boulton superintended the buying of materials, the construction of the improvements, the entering of drifts and air shafts, and all other things necessary to the opening and developing of said coal tract, being assisted in the actual opening of said mines by John Benson.

23. That the first coal from said mine was produced in June, 1914.

24. That Harry Boulton superintended the sale of the product of said mines after they reached a producing basis.

25. That said mines did not reach a dividend paying basis until December, 1916, and the first dividends were not declared thereon until 1917.

26. That in March, 1917, the plaintiff sold his capital stock of the Hale and Lady Smith Coal Mining Company and received therefor the sum of $47,670.

27. That the plaintiff, after being given the right to subscribe, invested cash to the amount of $11,500, as found by the government.

28. That the plaintiff filed an income tax return for the year 1917, in which he gave the sum of $18,670 as profit on the sale of the stock of the two corporations.

29. That the amount in contest herein is the sum of $3,138.59, with interest from May 11, 1923, being an overassessment of $2,989.-08, and a penalty of $149.51, assessed by reason of the nonallowance by the Commissioner of any sum to Harry Boulton for the value of his services rendered.

30. That at the time of being permitted to subscribe for the stock of the Hale Coal Company and the Lady Smith Coal Mining Company, the plaintiff contemplated that he would be required to expend his services without charge over a period of years to the amount of approximately $20,000.

31. That the plaintiff herein claims that the services rendered by him for the years 1912 to 1916, inclusive, were of a minimum value of $3,500 per year, and that he is entitled to a credit for same of a total of $17,-500 on the cost of his stock of said corporations.

32. That the total cost to the plaintiff of the stock of said corporations was $29,000.

33. That the plaintiff was given the right to subscribe to said stock by reason and in consideration of services to be rendered by him without charge.

34. That the cost of the right to subscribe of the plaintiff was not less than $17,500.

### Conclusions of Law.

I. The additional assessment of $6,165.-17 and the penalty of $308.26 were improper and incorrect.

II. That the measure of profit to the plaintiff from the sale of the stocks in question is the difference between the selling price and the cost price which is determined by the moneys and services advanced by the plaintiff.

III. That the services rendered by the plaintiff in the opening, developing, and marking of said coal are part of the cost to him of his stock in said corporation.

IV. That the plaintiff is entitled to have the value of his services added to the moneys invested by him in determining the costs of the shares of the Hale Coal Company and the Lady Smith Coal Mining Company.

V. That judgment should be entered in favor of the plaintiff and against the defendant for the sum of $3,138.59 with interest from the 11th day of May, 1923.

### Discussion.

The question involved in the instant case is the propriety of the refusal of the Commissioner of Internal Revenue, in determining the profits of plaintiff arising from the sale of his stock in two certain corporations, to allow as part of the cost to plaintiff the value of certain services rendered by him in connection with the organization of the corporations and their operation prior to any return of dividends by them.

The plaintiff claims in the present suit that in addition to the amount of money actually paid by him for the stock in question in order to acquire it, he was compelled by his contract with the other incorporators and with the original owners of the properties taken over by the corporations, to expend labor and effort which was worth at least the sum of $17,500. The uncontradicted testimony shows that this service was agreed upon and rendered; that it was worth $17,500; and that plaintiff received no compensation therefor other than by the right to acquire the stock. Under these circumstances it is our opinion that the plaintiff is entitled to claim that the cost of his stock was not merely $11,500, the amount of money paid, but also $17,500, the value of his services rendered pursuant to his agreement. The addi-

tional assessment of $6,165.17, and the added penalty of $308.26 for delay in payment thereof, in this view of the matter, was incorrect, and the plaintiff is entitled to recover herein the sum of $3,138.59, the amount of tax assessed against him by reason of the disallowance of the value of the services as part of the cost of the stock, with interest from May 11, 1923. Judgment will be entered for that amount in favor of plaintiff.